Charles Bradley VEHORN, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9709–CR–491.

Supreme Court of Indiana.

Aug. 27, 1999.

Belle T. Choate, Indianapolis, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Charles Vehorn was convicted of Murder and Auto Theft for shooting his girlfriend to death and stealing her car. He appeals, arguing that evidence of his stormy relationship with the victim was improperly admitted, that the vehicle was illegally searched, and that there was insufficient evidence to support his conviction. Finding to the contrary, we affirm Defendant's convictions.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

*Background*

The facts most favorable to the verdict show that during the evening of April 2, 1996, Defendant shot his girlfriend, Brenda DeMoss, inside the house where they lived. One neighbor confirmed that both Defendant and DeMoss were home that evening, and another neighbor testified that around 7:00 p.m., three "bangs" that sounded like "fireworks" came from the direction of Defendant's residence.

At around 10:00 p.m. that same night, Defendant arrived at his father's house driving DeMoss's car. He appeared "nervous" and remarked to his father that he "messed up real bad." At one point during the conversation, he told his father that he had a .22 gun and ammunition. Defendant also told his father that DeMoss was visiting relatives. Two days later, Defendant departed his father's residence driving DeMoss's car.

After two days in which she did not show up for work, DeMoss's sisters went to her home on Friday, April 5th, 1996, to find the house locked and the shades pulled. They contacted a locksmith to open the door, and found DeMoss's body on the living room floor. She had been shot ten times with Defendant's .22 caliber rifle resulting in her death.

On May 13, 1996, Defendant was found sleeping in DeMoss's car in a public park in Riverdale, Georgia in violation of a city ordinance. After a patdown search, the police found a large kitchen knife under his coat. He was arrested for carrying a concealed weapon. Soon thereafter, the police discovered that the vehicle was reported stolen. Pursuant to departmental policy, the police impounded the vehicle and performed an inventory search at the scene. Both the .22 caliber rifle and DeMoss's checkbook were found in the car. Defendant was charged with Murder[1] and Auto Theft.[2] The jury found Defendant guilty as to both counts, and the trial court

---

1. Ind.Code § 35–42–1–1 (1993).

2. *Id.*

imposed a sentence of 65 years for the Murder conviction and three years for the Auto Theft conviction.

## Discussion

### I

Defendant contends that the trial court committed reversible error by admitting the testimony of DeMoss's sister, Lisa Meece, that (1) Defendant and DeMoss had a stormy relationship and that (2) DeMoss had tried to end the relationship. Defendant argues that this testimony was inadmissible hearsay and was only offered as circumstantial proof that he murdered DeMoss.

Defendant challenged the admissibility of Meece's testimony during a pretrial evidentiary hearing. Before trial began, the State informed the court and Defendant of its intent to elicit certain testimony through DeMoss's sister about the nature of Defendant's relationship with DeMoss. Defendant objected to this testimony on the basis that it was inadmissible hearsay.[3] The trial court heard argument and denied the motion. It held that it would allow testimony as to statements made by the victim concerning her intentions to ask Defendant to leave because these were "statements of her mind and relevant to the nature of the relationship." Later during trial, Defendant did not object to Meece's testimony describing the relationship as "rocky" and that DeMoss had tried to "kick [Defendant] out a couple of times." The State contends that Defendant waived any error in the admission of this evidence by failing to object when Meece's testimony was offered at trial.

As a general rule, motions *in limine*[4] will not alone preserve errors for appeal; a party must contemporaneously reassert the party's objection at trial so as to allow the trial court an opportunity to make a final ruling on the matter in the proper context. *White v. State*, 687 N.E.2d 178, 179 (Ind.1997). While the prudent lawyer will always provide a contemporaneous objection at trial so as to preserve an issue for appeal, there are

3. The State argues on appeal that because Defendant stated his objection at the pretrial hearing under Indiana Rule 404(b) ("Other Crimes, Wrongs, or Acts."), and not as a hearsay objection, that "this Court should refuse to review his claim that the trial court improperly admitted hearsay." Appellee's Br. at 11. Our review of the record reveals that it was the State that initially framed the issue of the admissibility of hearsay for the trial court to consider in its pretrial ruling. In the words of the deputy prosecutor:

With respect to the 404B evidence and also, I guess, hearsay issues that may arise during the questioning of three of the State's witnesses, we'll advise the defense and the Court that ... Lisa Hamilton Meece ... will be asked about information related to the nature or the status of the relationship between the Defendant, Charles Vehorn, and Brenda DeMoss in the brief period immediately preceding her murder.

(R. at 133.) Moments later, the trial judge specifically asked defense counsel, "Do you object to testimony concerning the nature of the relationship in general?" (R. at 144.) Defense counsel responded, "Yes, if it's not based on direct knowledge." The admissibility issue of Meece's hearsay statements concerning Defendant's relationship with De-Moss, therefore, was squarely before the trial court, and thus is preserved for appeal. This is notwithstanding the fact that defense counsel *initially* began his argument by objecting under Rule 404(b). In reviewing the relevant portion of the trial court's evidentiary ruling, it is clear that the judge was addressing the admissibility of hearsay statements and did not limit his ruling to Rule 404(b) issues:

But as to the evidence concerning the relationship of the Defendant with the victim in this case, the Court will allow that testimony, including statements made by the victim as they relate to her intentions to end the relationship or what the status of the relationship was as *statements of her mind* and relevant to the nature of the relationship. (R. at 153.) (emphasis added).

4. Defense counsel made an *oral* motion *in limine* seeking to prevent the State from introducing testimony as to Defendant's rocky relationship with the victim. (R. at 143–44.) Oral motions in limine suffice for purposes of evidentiary rulings. *See Davis v. State,* 598 N.E.2d 1041, 1047 (Ind.1992) (upholding an oral motion in limine by the State preventing either side from asking prospective jurors about their views on the death penalty in extreme cases, such as "if Hitler were on trial").

occasional exceptions to this general rule. This case provides one of them. During the pretrial hearing, the judge provided explicit assurance that an objection as to Meece's hearsay testimony was preserved for appeal when it told defense counsel that "even if you don't object, the Court will find ... that your objections to this type of evidence have been timely made."[5] (R. at 157.) Finding that the issue of the admissibility of Meece's testimony has been properly preserved for appeal, we proceed to the merits of Defendant's argument.

Defendant contends that Meece's testimony is inadmissible hearsay and does not fall within the present state of mind exception. Rather, he maintains, it was offered to prove the truth of the matter asserted—that is, that the two had a stormy relationship and that DeMoss had asked Defendant to leave—"so that the Jury could then infer circumstantially that there would be a basis for [Defendant] to murder DeMoss." Furthermore, Defendant argues that DeMoss's state of mind at the time of her murder was not an issue at trial.

 We accord the trial court substantial discretion in ruling on the relevancy of evidence. *Hunter v. State,* 578 N.E.2d 353 (Ind.1991); *Thompson v. State,* 613 N.E.2d 461, 466 (Ind.Ct.App.1993). Furthermore, we will reverse a trial court's hearsay ruling "only if the court has abused its discretion. We will sustain the trial court if it can be done on any legal ground apparent in the record." *Light v. State,* 547 N.E.2d 1073, 1081 (Ind. 1989) (citation omitted).

 Only relevant evidence is admissible, Ind. Evidence Rule 402, and relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Evid. R. 401. A victim's state of mind is relevant where it has been put at issue by the defendant. *Taylor v. State,* 659 N.E.2d 535, 543 (Ind.1995). In this case, Defendant put DeMoss's state of mind at issue by trying to downplay difficulties in their relationship as merely the inevitable consequence of two individuals who lived a "hard life"; that they were not "uncommon" given their "on-again, off-again relationship."[6] Also in evidence was Defendant's statement given during an extradition interview in Georgia to the effect that the status of Defendant's relationship with DeMoss was amicable and that DeMoss gave Defendant "permission to use the car."[7]

Having determined that the victim's state of mind was an issue at trial, we consider the question of hearsay. Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. Evid. R. 802. However, a statement of the declarant's then existing state of mind is not excluded by the hearsay rule. Evid. R. 803(3); *Ross v. State,* 676 N.E.2d 339, 345 (Ind.1996).

 If statements are admitted to show the declarant's state of mind, and not to prove the substantive content of those statements, they do not run afoul of the hearsay rule because, by definition, those statements are not "hearsay" pursuant to

---

**5.** This assurance takes on even greater force when viewed in light of the trial judge's statement made to both counsel just minutes prior that "if there is a close evidentiary issue or point that the parties anticipate coming up ... [this court will] address that before the examination of the witness begins," (R. at 129); the judge continued that this was "because if it's a close call and ... an objection is sustained, *I don't want the Jurors to have*

*heard that,* although I would instruct them to disregard it," *id.* (emphasis added).

**6.** Defense counsel even went so far as to mention in his opening statement that "Brenda DeMoss kicked [Defendant] out of the house."

**7.** This evidence was admitted without objection.

Evidence Rule 802. *Angleton v. State*, 686 N.E.2d 803, 809 (Ind.1997); *see Lock v. State*, 567 N.E.2d 1155, 1159–60 (Ind.1991) ("We find that the statements made by the victim [that they were 'having trouble'] were properly admitted to prove that the relationship between the [defendant] and the victim was not completely benign, contrary to [defendant's] assertions at trial."), *cert. denied*, 503 U.S. 991, 112 S.Ct. 1686, 118 L.Ed.2d 400 (1992).

■ We recently approved of instances where statements are admissible to controvert a defendant's evidence when the defendant puts the victim's state of mind at issue. *Ford v. State*, 704 N.E.2d 457 (Ind.1998) (Victim's statement to witness " 'that she was unhappy and that she wanted to leave but she was afraid that if she left [the defendant] again he would kill her,' " was admissible as indicative of her state of mind.); *Taylor v. State*, 659 N.E.2d 535 (Ind.1995) (Victim's statement to police officer that she was scared to come forward with sexual abuse allegations was admissible under state of mind exception.). Meece's testimony concerning (1) DeMoss's stormy relationship with Defendant and (2) DeMoss trying to end the relationship both fall into this category of statements offered for the non-hearsay purpose of showing the victim's state of mind. This testimony tends to contradict Defendant's argument that DeMoss allowed him to take her car and checkbook out of state, given that she had asked Defendant to leave their troubled relationship. Furthermore, we believe the probative value of this evidence is greater than any possible prejudicial effect, *see Ford*, 704 N.E.2d at 460; *Lock*, 567 N.E.2d at 1159–60, considering there was other evidence [8] establishing their troubled relationship. *See Cooley v. State*, 682 N.E.2d 1277, 1282 (Ind.1997) (Any error in admitting testimony was harmless as the "hearsay evidence [was] merely cumulative of other evidence properly admitted."). The trial court did not abuse its discretion in admitting Meece's testimony over Defendant's objection.

## II

Defendant contends that evidence obtained from his vehicle was the fruit of an illegal search because the officer did not have a warrant and the search was not a valid "consent search." Defendant claims that because he was not offered the opportunity to consult counsel, the trial court was obligated to grant his motion to suppress evidence obtained during the search of his car. Defendant cites *Jones v. State*, 655 N.E.2d 49 (Ind.1995), as support for his claim. At issue in *Jones* was the validity of the defendant's consent to search his car after being stopped by police for a minor traffic offense. But Defendant's consent is not at issue here. The incriminating evidence was not discovered pursuant to a "consensual" search but during an inventory search immediately following Defendant's arrest.

The pertinent time line was that after he woke Defendant, the officer asked for permission to search the vehicle. Defendant consented to the search and then exited the car. Defendant was not in custody at this time. *Before a search was conducted*, the officer patted down Defendant which led to the discovery of a large kitchen knife and Defendant's initial arrest for carrying a concealed weapon. Soon thereafter, another officer arrived on the scene and it was discovered that the car was reported stolen. Only after Defendant was arrested and placed in the officer's car was the car inventoried and the incriminating evidence found.

■ The Fourth Amendment protects persons from unreasonable searches and seizures and this protection is applicable to the states through the Fourteenth

---

8. Additional evidence concerning Defendant's relationship with DeMoss, included an eyewitness account of Defendant verbally abusing and pushing her, as well as Defendant's own admission that DeMoss was kicking him out.

Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). As a general rule, the Fourth Amendment prohibits warrantless searches. *Berry v. State*, 704 N.E.2d 462, 465 (Ind.1998) (citing *Brown v. State*, 691 N.E.2d 438, 443 (Ind.1998)). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.* (citing *Brown*, 691 N.E.2d at 443). One well-recognized exception to the warrant requirement is an inventory search of a vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Fair v. State*, 627 N.E.2d 427, 431 (Ind.1993).

 In determining the propriety of an inventory search, "the threshold question . . . is whether the impoundment itself was proper." *Fair*, 627 N.E.2d at 431(citing *United States v. Young*, 825 F.2d 60, 61 (5th Cir.1987), *cert. denied*, 485 U.S. 1012, 108 S.Ct. 1483, 99 L.Ed.2d 711 (1988)). Here, Defendant driver was arrested in a vehicle that was reported stolen from another state. We find that the arresting officer was justified in impounding the vehicle. *Cf. Johnson v. State*, 553 N.E.2d 477 (Ind.1990) (holding that the police were justified in impounding a vehicle when the driver has been arrested).

 The second step of the test for the validity of inventory searches of automobiles looks to the reasonableness of the search itself. "Even the lawful custody of an impounded vehicle does not of itself dispense with the constitutional requirement of reasonableness in regard to the searches conducted thereafter. Instead, to pass constitutional muster, the search itself must be conducted pursuant to standard police procedures," *Fair*, 627 N.E.2d at 435 (citing *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)), and "searches in conformity with such regulations are reasonable under the Fourth Amendment," *id.* (citing *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). In

this case, while the inventory search was conducted at the crime scene and not at the impoundment lot, the arresting officer testified that this was in accordance with "standard Riverdale Police Department policies." Furthermore, formal inventory sheets were completed and pictures taken to make an accurate record of *all* of the vehicle's contents and not just the incriminating evidence.

 The trial court did not abuse its discretion in determining that Georgia police properly impounded the vehicle and followed standard operating procedure, thus the inventory search of the car was reasonable. The trial judge correctly denied Defendant's motion to suppress.

### III

 Defendant contends that there was insufficient evidence to sustain his convictions because the State failed to present any direct evidence and that all of the evidence is circumstantial. Our standard of review for claims challenging the sufficiency of the evidence is well settled. "Whether the evidence is direct or circumstantial, we will not reweigh it or assess the credibility of witnesses." *Moore v. State*, 652 N.E.2d 53, 55 (Ind.1995) (citing *Green v. State*, 587 N.E.2d 1314 (Ind.1992); *Litel v. State*, 527 N.E.2d 1114, 1115 (1988)). We review only the evidence presented at trial and the reasonable inferences drawn therefrom that support the verdict in deciding "whether there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt" *Id.* (citing *Litel*, 527 N.E.2d at 1115; *Case v. State*, 458 N.E.2d 223, 226 (Ind.1984)).

 This Court has held previously that a conviction for murder may be based solely on circumstantial evidence. *Moore*, 652 N.E.2d at 55 (citing *Green*, 587 N.E.2d at 1315); *Utley v. State*, 589 N.E.2d 232, 241 (Ind.), *cert. denied*, 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993). And

such a verdict will stand if the jury could reasonably infer that the defendant is guilty beyond a reasonable doubt from the circumstantial evidence presented. *Biggerstaff v. State*, 432 N.E.2d 34, 36 (Ind. 1982). On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of ·innocence. *Swafford v. State*, 498 N.E.2d 1188, 1192 (Ind.1986). It is enough if an inference reasonably tending to support the verdict can be drawn from the circumstantial evidence. *Id.*

The evidence supports an inference that Defendant killed DeMoss and stole her car. Defendant and DeMoss were both seen at home on the same evening that a neighbor heard three "bangs" coming from the direction of Defendant's residence. On that same night, Defendant arrived alone at his father's house driving DeMoss's car, appearing "nervous" and remarked to his father that he "messed up real bad." Defendant acknowledged to his father that he had a .22 gun in his possession. At trial, the State established through a ballistics expert that this was the murder weapon. Defendant explained DeMoss's absence to his father by telling him that she was visiting relatives. Two days later, Defendant departed his father's residence driving DeMoss's car. DeMoss's dead body was eventually found on the living room floor, having been shot ten times with Defendant's .22 caliber rifle. A few days later, Defendant was found sleeping in DeMoss's car in a public park in Riverdale, Georgia, and both the .22 caliber. rifle and DeMoss's checkbook were found in the car.

While the evidence presented by the State is circumstantial, after considering all the evidence most favorable to the verdict as well as drawing all reasonable inferences therefrom, we find the jury could have reasonably concluded that Defendant killed DeMoss and then stole her car. in an effort to flee the state.

*Conclusion*

We affirm the judgment of the trial court as to both counts.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.