**Michael TROUTMAN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 71S00–9807–CR–394.**

Supreme Court of Indiana.

May 8, 2000.

Sean P. Hilgendorf, South Bend, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Michael Troutman was convicted of killing an elderly woman after he broke into her home. He appeals, claiming that the trial court incorrectly denied his request to delay his trial, that there was insufficient evidence to convict him, and that he was denied his constitutional right to effective assistance of counsel. Finding the court's ruling proper, evidence sufficient, and counsel not ineffective, we affirm.

We have jurisdiction over this direct appeal because the sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

*Background*

The facts most favorable to the verdict reveal that on the evening of August 4, 1997, Defendant Michael Troutman forced his way into the home of Barbara Otolski and attacked her as she sat in her living room. Defendant then forced Otolski into the basement and bludgeoned her to death with a pistol.

On June 11, 1998, a jury found Defendant guilty of Murder.[1] The trial court imposed a 65-year sentence.

We will recite additional facts as needed.

I

Defendant contends that the trial court committed reversible error by denying his motion for a continuance prior to the start of trial. Specifically, he claims the trial court abused its discretion in this regard because "there was outstanding discovery, ... further investigations as to recently disclosed discovery items and witnesses needed to be done in order to properly prepare a defense, and ... there was an outstanding request for funds to hire an expert witness in forensics." Appellant's Br. at 10 (citing R. at 87–88).

Indiana Code § 35–36–7–1 (1993) provides for a continuance upon a proper showing of an absence of evidence or the illness or absence of the defendant or a witness. Rulings on non-statutory motions for continuance lie within the sound discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. *See Chinn v. State*, 511 N.E.2d 1000, 1003 (Ind.1987) (citing *Brown v. State*, 448 N.E.2d 10 (Ind.1983)), *reh'g denied*; *see also Little v. State*, 501 N.E.2d 447, 449 (Ind.1986). As we will demonstrate *infra*, Defendant's motion in this case is of the second type.

Defendant filed his motion for continuance on May 27, 1998, twelve days before the start of trial. The trial court held a hearing on the matter the next day to

1. Ind.Code § 35–42–1–1 (1993).

determine whether Defendant was entitled to a third continuance.[2] Among the requests the trial court considered were that Defendant needed additional time: (1) to hire a forensic expert to analyze a sample of a palm print taken from the victim's home phone and fingerprint samples taken from the victim's dryer;[3] (2) to analyze copies of shoe print samples; and (3) for the defense investigator to complete her ongoing investigation. Additionally, Defendant complained that: (4) he did not receive a final State witness list to include criminal history checks on its civilian witnesses; and (5) the State had destroyed his hand-written statement. We will review the trial court's rulings on each point in turn.

■ In considering the request for a forensic expert, the trial judge noted that Defendant had been provided ample opportunity to analyze both the palm print information, which had been provided to the defense in September of 1997, and the fingerprint information, which had been provided in February of 1998. While the trial judge refused to grant a continuance, he did grant Defendant's request for funds to hire an expert witness after defense counsel acknowledged that he had "two people narrowed down" to serve as experts, and with the trial nearly two weeks away, he felt that he "could have enough time to get the samples and to get someone to look over [them]." We observe that Defendant did not renew his motion for a continuance before trial.

■ With regard to the shoe print samples, the trial court heard testimony from the prosecuting attorney that the samples had "always been available to the defense for inspection," except when they were being analyzed at the crime laboratory. Moreover, there had "not been a request for [the samples] specifically, prior to" the continuance hearing. During the hearing, defense counsel did not object to, respond to, or otherwise contradict these statements.

■ Defendant also claimed that his "investigator [was] not done with her investigation, because there [were] still certain things that she [was] looking into[, ... specifically, the n]ames of other potential witnesses." (R. at 195.) The State responded that with twelve days left until trial, it had "not prepared a final list of witnesses that [it was] absolutely certain that [it was] going to use," but that it had "provided notice of potential witnesses in discovery, [and thus it] would be limited to those." (R. at 201.) Defendant has not directed us to a specific State witness whose testimony prejudiced him because he was unable to prepare for his or her

---

2. Before making its ruling, the trial court noted that Defendant's case had twice been continued – once by Defendant himself and once by mutual agreement of both parties.

3. We disagree with Defendant's position in this appeal that the trial court abused its discretion in denying his request for a continuance because his trial attorney had indicated that he "needed to hire a forensic expert to review the DNA evidence which was only recently made available to the defense." Appellant's Br. at 11–12.

   While we note that Defendant himself voiced his independent concern at the hearing about the DNA evidence that would be presented at trial, (R. at 217), our review of the hearing transcript indicates that the trial court considered and rejected Defendant's continuance based upon the defense's purported need for a *forensic expert to review the palm and fingerprints:*

   [Court]: Let's go through now the reasons once again for the request for a continuance. One is that you wanted to hire a forensic – what kind of expert?

   [Defense Counsel]: Fingerprint and palm print, somebody to do an analysis of that.

   [Court]: Anything else?

   [Defense Counsel]: Also, that expert we may have them review some shoe print evidence and blood evidence as well. But the primary focus that I'm looking at is the palm prints that were found in the residence that purportedly match.

   \* \* \*

   (R. at 191–92.)

cross-examination or was otherwise surprised by the witness's appearance.[4]

■ Finally, the trial court considered Defendant's allegation that the State had destroyed his handwritten statement or failed to provide him a copy thereof. The record is not exactly clear on this issue, but it appears as though Defendant was arrested in a separate robbery incident, during which a K–9 police dog bit him. The State contended that during the course of a stationhouse videotaped interview of Defendant, he wrote some notes "about the police dog bit[e]"; when he incidentally wiped his blood on the note, a pencil, and a rag, the police were required to destroy these materials "as biohazard." The prosecutor went on to state that this evidence was not material in that the note "contained no statements relevant to this or any other case, admissions or denials or otherwise."

Defendant's position was that he wrote that "he wanted an attorney, or something to that effect ... [e]ven though there [was] a signed waiver stating the opposite." (R. at 208.) In any event, the State made no attempt to introduce the videotaped statement at trial, and Defendant provides no explanation as to how a continuance (i.e., additional time) would have provided him an opportunity to retrieve the alleged evidence that the State acknowledged no longer existed. Appellant's Br. at 16–17.

In sum, we find that the trial court "consider[ed] the totality of the circumstances in determining if there was sufficient time to prepare," Carter v. State, 686 N.E.2d 1254, 1261 (Ind.1997), and gave " 'heed to the diverse interests' " of the parties when it denied Defendant's request for a continuance, Flowers v. State, 654 N.E.2d 1124, 1125 (Ind.1995) (quoting Vaughn v. State, 590 N.E.2d 134, 135 (Ind. 1992)). The trial court considered Defen-

dant's prior access to each piece of evidence and whether the handwritten note was material evidence in this case; it then weighed these considerations against the State's potential inability to re-coordinate the travel schedules of various state and federal expert witnesses in the event of a continuance. (R. at 197–98.) Moreover, Defendant has failed to demonstrate how the trial court's ruling prejudiced him. See Vance v. State, 640 N.E.2d 51, 55–56 (Ind.1994). We find that the trial court did not abuse its discretion in denying Defendant's motion for a continuance.

## II

Defendant next contends that the evidence was insufficient to support his conviction for murder. Specifically, he claims that there was "insufficient evidence to prove that [he] was the person who assaulted and killed Otolski, or that [he] was even present in Otolski's residence at the time of the assault and murder." Appellant's Br. at 20.

■ In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. Garland v. State, 719 N.E.2d 1236, 1238 (Ind.1999), reh'g denied. Rather we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the convictions if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Brown v. State, 720 N.E.2d 1157, 1158 (Ind.1999); Sanders v. State, 704 N.E.2d 119, 123 (Ind.1999). A conviction for murder may be based solely on circumstantial evidence. Vehorn v. State, 717 N.E.2d 869, 875–76 (Ind.1999). And on appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence. Id.

4. In regard to Defendant's complaint that he had not received criminal history checks on two State civilian witnesses, the State admitted that it was "obliged to provide criminal history to people" and that it would "[a]bsolutely" provide this information to Defendant. (R. at 203.)

■ The evidence supports an inference that Defendant killed Otolski. There was evidence of a forced entry. Footprints found outside the victim's home matched Defendant's shoes. Shoes identified as having previously belonged to Defendant were stained with the Otolski's blood. There was also evidence establishing Defendant's presence in the Otolski's home: A BB pistol which Defendant admitted taking from his ex-girlfriend's home was found in the basement. The pistol was stained with Otolski's blood and also contained hair consistent with Otolski's. Finally, Defendant's palm print was found on Otolski's home phone and his fingerprints were found on her dryer.

While the evidence presented by the State is circumstantial, after considering all the evidence most favorable to the verdict as well as drawing all reasonable inferences therefrom, we find the jury could have reasonably concluded that Defendant broke in Otolski's home and bludgeoned her to death with the pistol.

### III

Finally, Defendant contends that he received ineffective assistance of counsel. Specifically, he claims that his counsel was ineffective in "failing to make a timely request for an expert, and for failing to make a timely review of the physical evidence in this case." Appellant's Br. at 24.

■ ■ To prevail on a claim of ineffective assistance of counsel, a defendant must show that (i) defense counsel's representation fell below an objective standard of reasonableness and (ii) there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation. See Cook v. State, 675 N.E.2d 687, 692 (Ind.1996) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Douglas v. State, 663 N.E.2d 1153, 1154 (Ind.1996)). We presume that counsel's performance was adequate. Id.; Butler v. State, 658 N.E.2d 72, 78 (Ind.1995).

Defendant presents his ineffective assistance claim as an alternative proposition to his request for a continuance, such that if defense "counsel had sufficient time, prior to trial, to review the physical evidence presented at trial …, then his failure to timely procure an expert witness to rebut such evidence was both deficient and prejudicial." Appellant's Br. at 23. We disagree.

■ A defense counsel's poor trial strategy or bad tactics do not necessarily amount to ineffective assistance of counsel. See Whitener v. State, 696 N.E.2d 40, 42 (Ind.1998) (citing Davis v. State, 675 N.E.2d 1097, 1100 (Ind.1996)); Brown v. State, 691 N.E.2d 438, 447 (Ind.1998) (identifying that "[a] decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess").

■ In this case, we observe that the trial court first verified that defense counsel was conferring with potential expert witnesses before it granted Defendant's pre-trial request for funds to hire a forensic expert. And after reviewing the testimony of the State's expert witnesses and defense counsel's adequate cross-examination, we can only conclude that defense counsel's ultimate decision not to present additional rebuttal expert testimony was a matter of trial strategy. It is not unreasonable for an experienced trial lawyer to refrain from presenting additional evidence – in the form of rebuttal testimony – that may ultimately be detrimental to his or her client.

Here, the State presented substantial expert testimony concerning hair, palm print, fingerprint, footprint, and DNA evidence, involving precise, physical measurements and in some cases, chemical testing. Defendant has made no showing that the State's experts were less than precise or able in their testing and observations. Moreover, Defendant does not challenge the accuracy of the State's expert testimo-

ny nor point to other evidence, which would have formed the basis for a defense expert witness to challenge this testimony. We will not second-guess counsel's strategic decision to put the State to its burden, especially without a showing of prejudice. *See Rondon v. State*, 711 N.E.2d 506, 518 (Ind.1999) ("At first blush, it would seem that a trial strategy consisting of nothing more than putting the State to its burden is an improbable approach to a defense, especially in a capital case. However, this is precisely the type of decision that falls within the broad definition of trial strategy.").

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, BOEHM and RUCKER, J.J., concur.