## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2016, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Victoria Christ
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert L. Albores, Jr., <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | September 8, 2016 <br><br> Court of Appeals Case No. <br> 45A03-1511-PC-2020 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Diane Ross Boswell, Judge <br><br> The Honorable Daniel J. Molter, Special Judge <br><br> Trial Court Cause No. <br> 45G03-1405-PC-5 |

**Altice, Judge.**

## Case Summary

[1] Robert L. Albores, Jr., appeals from the denial of his petition for post-conviction relief. He asserts that the post-conviction court erred in rejecting his claims of ineffective assistance of trial and appellate counsel.

[2] We affirm.

## Facts & Procedural History

[3] The facts underlying Albores's conviction for murder were set forth by this court on direct appeal as follows:

> Albores and the victim in this case, Michael Miranda, got along with no problems for several years. However, in 2008, Albores's cousin[, Ruben Mercado,] was shot and killed. Albores believed Miranda was involved in the shooting. On July 22, 2010, Albores and Miranda found themselves stopped at an intersection at the same time. Albores fired [seven] shots at Miranda and drove away. Miranda died five days later.
>
> Albores was charged with murder and criminal gang activity. During the jury trial, the State presented evidence that Albores and Miranda were members of rival street gangs and argued that Albores shot Miranda in retaliation for his cousin's death in 2008. Albores testified at trial and denied being part of a gang. He did not deny he shot Miranda, but claimed he did so out of fear for his life. He described a turbulent relationship between the parties and a history of shootings that had allegedly occurred during the two years prior to the shooting that led to Miranda's death. The jury was instructed on both self-defense and the lesser included offense of reckless homicide. The jury returned a verdict of guilty on the murder charge and not guilty on the criminal gang activity charge. The trial court sentenced Albores to a fifty-five year term of imprisonment.

*Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*.

Albores raised one issue on direct appeal: whether the trial court abused its discretion by refusing to give his proposed jury instruction regarding the presumption of innocence. This court found no abuse of discretion and affirmed the murder conviction. Thereafter, our Supreme Court denied transfer by a vote of three to two on October 25, 2013.

Shortly thereafter, Albores filed for post-conviction relief (PCR). His amended PCR petition was filed November 12, 2014, alleging ineffective assistance of trial and appellate counsel. An evidentiary hearing took place on March 19, 2015, at which trial counsel, Samuel Cappas, and appellate counsel, Thomas Vanes, testified. The post-conviction court issued a lengthy written order on October 30, 2015, denying the PCR petition. Albores now appeals. Additional facts will be provided below as needed.

## Discussion & Decision

## Standard of Review

In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State,* 983 N.E.2d 1134, 1138 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* (quoting *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole

leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Id.* Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000)).

[7] A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Bethea,* 983 N.E.2d at 1138. To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 1139. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State,* 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland v. Washington,* 466 U.S. 668, 694 (1984)). Because a petitioner must prove both deficient performance and prejudice in order to prevail on a claim of ineffective assistance of counsel, the failure to prove either element defeats such a claim. *See Young v. State,* 746 N.E.2d 920, 927 (Ind. 2001) (holding that because the two elements of

*Strickland* are separate and independent inquiries, the court may dispose of the claim on the ground of lack of sufficient prejudice if it is easier). This standard applies to both ineffective assistance of trial counsel and appellate counsel claims. *Wright v. State,* 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied.*

## Ineffective Assistance of Appellate Counsel

Our Supreme Court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. *Wrinkles v. State,* 749 N.E.2d 1179, 1203 (Ind. 2001), *cert. denied.* Albores's claim falls into the second category. This category will lead to a finding of deficient performance only if we determine that the omitted issues were significant, obvious, and clearly stronger than those presented. *Id.* Ineffectiveness is "very rarely found in these cases" because "the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Bieghler v. State,* 690 N.E.2d 188, 193 (Ind. 1997), *cert. denied.* On review, therefore, we are "particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." *Id*. at 194.

Albores claims that appellate counsel was ineffective for failing to challenge the admission of certain evidence, which he and his trial counsel believed violated

Ind. Evidence Rule 404(b). Trial counsel fully preserved the issue and alerted appellate counsel to it.

[10] The evidence challenged at trial and admitted through the testimony of several witnesses related to a February 2004 incident that occurred when Albores was seventeen years old. On the afternoon in question, Albores waited in a vehicle while his cousin, Ruben Mercado, went into a convenience store. On the way inside, Mercado encountered Lee Hernandez, who appeared to be in a rival gang. The two exchanged words and a brief physical altercation ensued, ending with Mercado being shot in the head. As Hernandez ran from the scene with his handgun, Albores jumped into the driver seat and pursued him. Albores eventually drove onto the sidewalk and ran Hernandez down at a high rate of speed.[1] Hernandez went airborne. Albores then drove back to pick up Mercado, where a witness heard him tell Mercado that he had run over the shooter and they had to go. Shortly thereafter, a responding officer pulled over the vehicle being driven by Albores, with Mercado injured inside. Albores falsely informed the officer that Mercado had been driving when Hernandez was run down. The jury heard all of this evidence, but did not learn that Albores was charged with attempted murder and pled guilty to a reduced charge of criminal recklessness for hitting Hernandez.

---

[1] At the instant trial, Albores claimed he pursued Hernandez in an attempt to apprehend him. Albores testified further that he "bumped" Hernandez with the car out of fear only after Hernandez turned and pulled his handgun again. *Trial Transcript* at 787.

[11]     In response to Albores's 404(b) objections, the State argued that evidence of the 2004 incident was relevant to rebut his current self-defense claim and went to establish motive and intent. In other words, the State wanted to show that if you mess with Mercado, Albores is going to get you. The trial court took the issue under advisement and on the third day of trial ruled the evidence admissible under the "motive" exception of Rule 404(b).[2]

[12]     Appellate counsel testified at the PCR hearing that he seriously considered raising the 404(b) issue on direct appeal. After reviewing the trial transcript and case law, however, he ultimately decided not to raise the issue because he believed it would not be a "winner on appeal, not likely to produce a reversal." *PCR Transcript* at 33. Instead, counsel raised an instructional issue that he believed was the best issue and supported by case law.

[13]     The instructional issue raised on direct appeal, though ultimately unsuccessful, was strong and well argued. Indeed, the rejected jury instruction was identical to the one rejected in *Lee v. State*, 964 N.E.2d 859 (Ind. Ct. App. 2012), *trans. denied*, which was found by this court to be an abuse of discretion and reversible error. Further, our Supreme Court denied transfer of Albores's direct appeal by a narrow vote of three to two on October 25, 2013. A little over a year later, the Court granted transfer in *McCowan v. State*, 27 N.E.3d 760 (Ind. 2015) to resolve

---

[2] "Evidence of a crime, wrong, or other acts is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid. R. 404(b)(1). The evidence, however, may be admissible for a purpose other than propensity, such as proving motive or intent. Evid. R. 404(b)(2).

the split of authority in our court and held that if requested by the defendant, the court must give an instruction like the one at issue in *Lee*, *Albores*, and several other cases.[3]

[14] We cannot agree with Albores that the 404(b) issue was clearly stronger than the instructional issue raised by appellate counsel. At trial, the parties' competing theories were fixed from the start: Albores contended that he shot Miranda in self-defense, and the State argued that it was an act of revenge for the 2008 killing of Mercado. Accordingly, Albores's motive was affirmatively placed in issue by the defense. The 2004 incident involving Albores, Mercado, and Hernandez was relevant to a matter at issue other than Albores's general propensity to commit the charged act. The evidence helped establish the State's theory of motive and rebut Albores's self-defense claim. Moreover, with respect to prejudice, we observe that the jury was not made aware of the charge and conviction related to the 2004 events.

[15] We commend Albores for his thorough 404(b) argument in the instant appeal. On the facts of this case, however, we conclude that it was not unquestionably unreasonable for appellate counsel to choose not to raise the 404(b) issue and instead present only the instructional issue.

---

[3] Specifically, the Court stated "unequivocally and prospectively that it is the absolute right of every criminal defendant to receive the following jury instruction upon request: 'The presumption of innocence continues in favor of the defendant throughout the trial. You should fit the evidence to the presumption that the defendant is innocent if you can reasonably do so.'" *McCowan*, 27 N.E.3d at 762.

## Ineffective Assistance of Trial Counsel

[16]     Albores raises a number of alleged errors committed by trial counsel, each of which he claims constituted ineffective assistance. We will address each in turn.

### 1. Admonishment/Limiting Instruction Regarding the 2004 Incident

[17]     After losing the evidentiary battle regarding the 2004 incident, trial counsel requested a mistrial, which was denied, but did not request an admonishment or limiting instruction. Counsel explained this decision at the PCR hearing. He did not believe such was needed because the State's use of the evidence was clearly defined at trial. It was being used by the State solely to establish motive, and the jury knew that. While Albores would have been entitled to a limiting instruction and admonishment, counsel's strategic decision not to request such in this case did not amount to deficient performance or result in prejudice. *See Curtis v. State*, 905 N.E.2d 410, 414 (Ind. Ct. App. 2009) ("[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference), *trans. denied*.

### 2. Evidence of 2008 Shootings

[18]     Miranda's girlfriend, Nada Wills, and her mother, Nola Wills, testified about two instances where Nola's house was shot at soon after Mercado's death in 2008. Neither witness could identify the shooter, but Nada testified that she believed Albores was responsible because he and his family blamed Miranda for

Mercado's death. Nada testified that, out of fear, she and Miranda moved to another state with their children after these shootings. Nola also moved out of her longtime home to another community. Three officers offered very brief testimony regarding the 2008 shootings.

[19] On the morning of trial, counsel unsuccessfully moved in limine to exclude any evidence related to the 2008 shootings. The trial court ruled that the evidence would be admissible as relevant to Albores's state of mind (that is, he believed Miranda killed Mercado). Counsel did not reassert any objections with respect to this evidence at trial. Albores argues that counsel was ineffective for failing to challenge the evidence at trial as irrelevant because the shooting could not be linked to him.[4]

[20] We do not agree with the trial court's assessment that this evidence was admissible as relevant to Albores's state of mind. It could not be because insufficient evidence linked him to the 2008 shootings. *Cf. Camm v. State*, 908 N.E.2d 215, 224 (Ind. 2009) ("The value of specific acts evidence to prove motive rests on the strength of proof that the defendant in fact committed that other act. With no evidence connecting the defendant to the injuries, the inquiry lacked purpose."); *Wells v. State*, 441 N.E.2d 458, 463 (Ind. 1982)

---

[4] Albores also asserts that counsel should have moved to exclude this evidence because the State "never filed a notice of intent to offer 404(b) evidence about the 2008 shootings." *Appellant's Brief* at 32. There is no support for this assertion in the record. At the PCR hearing, there was a reference to a "late disclosure" but no indication regarding a complete failure to provide notice in this regard. *PCR Transcript* at 14. Further, the hearing on the morning of trial establishes that counsel had notice of the State's potential use of evidence from the 2008 shootings.

(requiring evidence of probative value showing that the defendant actually engaged in the prior acts).

[21] Nevertheless, we believe the evidence was relevant and inextricably bound up with the charged crimes. *See Pope v. State*, 740 N.E.2d 1247, 1250 (Ind. Ct. App. 2000) ("Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."). It established that within days of Mercado's death, Nola's otherwise peaceful residence[5] was shot up on two separate occasions. Although the perpetrator was never identified, it is apparent that these shootings were in retaliation for Mercado's death, for which Miranda was believed responsible. Further, the shootings resulted in Miranda and Nada fleeing the state and Nola leaving her home for a period of time. All of this was relevant to the State's theory that Miranda was killed in a gang-related, retaliation shooting twenty-one months after Mercado's death – the delay being the result, at least in part, of Miranda's relocation. Further, considering the balancing test of Ind. Evidence Rule 403, any unfair prejudice resulting from this evidence was tempered by the witnesses' acknowledgments that they could not identify the shooter.

[22] In sum, we cannot say that had trial counsel objected to this evidence at trial, it would have been excluded. *See Taylor v. State*, 929 N.E.2d 912, 918 (Ind. Ct.

---

[5] Nola testified that she had lived in the home for about eighteen years and had never had such problems.

App. 2010) ("To establish ineffective assistance for counsel's failure to object, a petitioner must show that the trial court would have sustained the objection had it been made and that the petitioner was prejudiced by the failure to object."), *trans. denied*.[6]

### 3. Hearsay Evidence

Albores argues further that counsel should have objected to certain hearsay statements made by Miranda and admitted during the testimony of Nada and Nola. Both witnesses testified that at some point after Mercado's death, Miranda told them that he was afraid Albores was going to kill him and that he (Miranda) did not kill Mercado.

Evidence of a declarant's then-existing state of mind is a well-recognized exception to the hearsay rule. *See* Ind. Evidence Rule 803(3). Such testimony is relevant and admissible when the defendant puts the victim's state of mind in issue. *See Hatcher v. State*, 735 N.E.2d 1155, 1161 (Ind. 2000); *Vehorn v. State*, 717 N.E.2d 869, 873 (Ind. 1999).

Both during opening statement and Albores's trial testimony, the defense detailed a number of threatening encounters between Miranda and Albores, all

---

[6] We find wholly without merit the State's repeated assertion that the trial court was unlikely to change the ruling it made with regard to this evidence before trial. *See id*. ("It makes no difference whether counsel had a reasonable expectation that the trial court would change its ruling upon objection. Instead, the proper inquiry is whether the trial court would have had no choice but to sustain the objection; that is, whether the evidence should have been excluded.").

allegedly initiated by Miranda or his fellow gang members. Albores claimed that Miranda shot at him or his residence on multiple occasions from 2008 to 2010. He also testified that shortly before Miranda was killed, Miranda drove past Albores's place of employment, rolled down his window, and extended his arm while saying "You're snoozing." *Trial Transcript* at 852. Albores claimed to be scared for his life as a result of these encounters.

[26] In light of this evidence and argument, Albores clearly put Miranda's state of mind at issue and contrary evidence that Miranda was the one fearful of Albores was relevant. While counsel could have requested a limiting instruction, we do not find the lack of one to have prejudiced Albores.

[27] With respect to the testimony that Miranda told Nada and Nola that he did not kill Mercado, we find that any error in its admission was harmless. Both the State's and the defendant's cases were premised on the theory that Albores believed Miranda killed Mercado. Whether he did or not was really beside the point. Further, Nola and Nada's testimonies were contradicted by Albores's testimony that Miranda admitted to Albores that he killed Mercado.

### 4. "Bloodhound" Evidence

[28] Albores contends that counsel should have objected to "bloodhound evidence" admitted at trial. *Appellant's Brief* at 19. Citing *Brafford v. State*, 516 N.E.2d 45 (Ind. 1987), Albores argues that such evidence is too unreliable to be admissible. *Brafford*, however, was decided prior to the adoption of the Indiana Rules of Evidence and is no longer controlling. *See Myers v. State*, 33 N.E.3d

1077 (Ind. Ct. App. 2015), *trans. denied*. Seemingly acknowledging this, Albores goes on to baldly assert that counsel could have argued that the evidence was inadmissible under Indiana Evidence Rule 702 because it was not based on reliable scientific principles.

[29] The evidence in question involved police K9 searches (not what is commonly understood as a bloodhound search) of Miranda's vehicle five days after the shooting and Albores's apartment upon his arrest seven months after the shooting. In each search, the K9s did not alert to the presence of a firearm.

[30] Albores wholly failed to establish at the PCR hearing that the K9 evidence presented at trial was not based on reliable scientific principles. Further, trial counsel testified at the PCR hearing that he did not object to evidence of the K9 search of the impounded vehicle, even though it was done five days after the shooting, because he considered the evidence "superfluous." *PCR Transcript* at 17. Indeed, other evidence at trial established that Miranda was not armed at the time Albores shot him.[7]

*5. Amendment Adding Criminal Gang Activity Count*

[31] A week before trial, the State amended the charging information to add a second count, criminal gang activity. Trial counsel did not object to the late

---

[7] For example, the evidence technician who processed the scene, Officer Yon Fletcher, testified that he did not find a gun or knife anywhere in Miranda's vehicle.

filing because he did not believe the amended count changed the substance of the case. Albores claims this constituted ineffective assistance.

[32] A charging information may be amended in matters of substance any time before the commencement of trial if the amendment "does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5. "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (quoting *Ramon v. State*, 888 N.E.2d 244, 252 (Ind. Ct. App. 2008)), *trans. denied*. In the end, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Gomez*, 907 N.E.2d at 611.

[33] Prior to the amendment, Albores was already facing a murder charge with a criminal gang enhancement. Although the new charge of criminal gang activity was a separate count, Albores does not dispute that the evidence related to this charge would be virtually the same as the evidence for the enhancement. Further, Albores's argument that the gang evidence coming in during the guilt phase of trial (instead of the enhancement phase) affected his substantial rights misses the mark. There is simply no indication that the amendment altered Albores's defense theory or resulted in him being unprepared to defend against the charges. Accordingly, trial counsel was not ineffective in this regard.

## 6. Self-Defense Instruction

[34] Finally, Albores contends that trial counsel should have objected to the court's instruction on self-defense. This instruction provided:

> The killing of another human being may be justified on the theory of self-defense if the perpetrator:
>
> 1) acted without fault;
>
> 2) was in a place where he had a right to be;
>
> 3) was in real danger of great bodily harm or in such apparent danger as to cause him in good faith to fear death or great bodily harm.
>
> The danger of death or great bodily harm need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act at such times, even though in retrospect it is proven they have erred, if they acted reasonably, in view of the surrounding circumstances under which the events took place. The law of self-defense does not, however, protect one who kills another human being through anger or revenge in an encounter provoked and brought on by himself.
>
> The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.
>
> If you believe from the evidence in this case that the defendant killed the decedent in self-defense or if you have a reasonable doubt as to whether or not the defendant killed the decedent in self-defense, then he cannot be found guilty of the offense of murder.

*Direct Appeal Appendix* at 136. Albores argues that the instruction failed to indicate that he did not have a duty to retreat or that deadly force could be used

to prevent a forcible felony. He also asserts that the instruction improperly included language that unduly emphasized the State's revenge theory.

[35] In order to establish trial counsel ineffectiveness based on failure to object to a jury instruction, a petitioner must first prove that a proper objection would have been sustained. *Lambert v. State*, 743 N.E.2d 719, 741 (Ind. 2001), *cert. denied*. Additionally, a petitioner must prove that the failure to object was unreasonable and resulted in sufficient prejudice such that there exists a reasonable probability the outcome would have been different had counsel objected. *Id.*

[36] It is true that, in Indiana, a person confronted with deadly force is not obliged to retreat. *See Patton v. State*, 837 N.E.2d 576, 581 (Ind. Ct. App. 2005) (citing *French v. State*, 403 N.E.2d 821, 825 (Ind. 1980)). This case, however, was not about mutual combat or who was the aggressor, and the State did not argue that Albores had a duty to retreat once he believed he was facing deadly force. Indeed, the evidence reveals that the shooting occurred almost immediately as the two vehicles were stopped side by side. Albores shot at an unarmed man seven times. The jury was tasked with determining whether Albores truly believed he saw Miranda pointing a gun at him, placing him in fear of being shot. Retreat at this point was not an issue, and we fail to see how exclusion of this point of law prejudiced Albores.

[37] Similarly, no prejudice resulted from omission of "fear of forcible felony" as a justification for using deadly force. Albores's defense at trial was that he reasonably believed he was defending himself in a situation where he was

confronted with deadly force. The suggested addition to the instruction – though a correct statement of the law – would have had no effect on the outcome of the murder trial.

[38] Albores's final challenge to the instruction is not well-developed and not adequately supported by relevant authority. Essentially, he baldly asserts that "inclusion of non-statutory language that killing in revenge or anger unnecessarily emphasized one particular evidentiary fact the prosecutor stressed, invaded the province of the jury and was not proper language for an instruction." *Appellant's Brief* at 50. His argument falls far short of establishing deficient performance and resulting prejudice.

[39] Judgment affirmed.

[40] Bailey, J. and Bradford, J., concur.