# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 09 2016, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph P. Hunter
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio R. Harrison,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 9, 2016<br><br>Court of Appeals Case No.<br>27A04-1411-CR-551<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Dana J. Kenworthy, Judge<br><br>Trial Court Cause No.<br>27D02-1407-FA-16 |

**Baker, Judge.**

[1] Antonio Harrison appeals his convictions for Dealing in a Narcotic Drug,[1] a class A felony, Possession of a Controlled Substance,[2] a class D felony, Maintaining a Common Nuisance,[3] a class D felony, Possession of Paraphernalia,[4] a class A misdemeanor, Possession of a Narcotic Drug,[5] a class D felony, and Possession of a Synthetic Drug,[6] a class A misdemeanor. Harrison argues that the trial court committed fundamental error by admitting certain evidence, that there is insufficient evidence supporting the dealing in a narcotic drug conviction, and that he received the ineffective assistance of trial counsel. We affirm.

# Facts

[2] On May 6, 2014, the Grant County Joint Effort Against Narcotics (JEAN) Drug Force utilized a confidential informant (CI) to engage in a controlled buy of heroin at Harrison's residence in Marion. The CI had notified the JEAN Drug Force that he could buy heroin from Harrison. Officer Mark Stefanatos and Officer Leland Smith were both familiar with Harrison, having interacted with him in the past. Both Officers Stefanatos and Smith were able to identify

---

[1] Ind. Code § 35-48-4-1.

[2] I.C. § 35-48-4-7.

[3] I.C. § 35-48-4-13.

[4] I.C. § 35-48-4-8.3

[5] I.C. § 35-48-4-6.

[6] I.C. § 35-48-4-11.5.

Harrison by hearing his voice. Based on the information provided by the CI, the police obtained a search warrant for Harrison's residence.

[3] The morning of May 6, the CI was in police custody from 10:30 a.m. until the completion of the controlled buy. Police took his cell phone—the only time the CI used it was when he made a recorded and monitored call to Harrison to arrange the buy. An officer procured the money for the controlled buy, and Officer Smith captured the serial number of each bill with his telephone camera. The CI was searched at the police station before Officer Stefanatos drove him to Harrison's house, and he had nothing on his person. The officers affixed audio and video recording devices to the CI's person and gave him $1,000 to complete the buy.

[4] Officer Stefanatos drove the CI to a location near to Harrison's residence. The officer watched and followed the CI as he walked to and from the residence; the video camera also captured the journey. The CI did not stop or pick anything up on his way to or from the house. The CI knocked on Harrison's door and entered. Once inside, Harrison told the CI that he would have "more coming in next week." Tr. p. 302. Upon completing the transaction, the CI exited the house and walked back to the police vehicle. He had 3.37 grams of heroin in his possession that had been given to him by Harrison in exchange for the money.

[5] A few minutes later, the Emergency Response Team executed the search warrant at Harrison's residence. In the master bedroom, the officers found the

following items: an assault rifle, a loaded handgun, an eyeglass case holding five grams of marijuana, 1.4 grams of heroin, one hydrocodone pill, one morphine pill, one Alprazolam pill, a hitter pipe, small Ziploc baggies, two digital scales, and a piece of a straw. In the basement, the officers found the following items: 1.2 grams of heroin behind an electrical panel, a digital scale, an eyeglass case containing a tie-off string (typically used by drug users to tie off the circulation in their arms or legs), needles, a metal measuring spoon with some residue on it, a small cotton ball, cotton swabs, and two lighters. In the kitchen and dining room, the officers found the following items: a partially burned synthetic marijuana cigarette, two digital scales, and a pack of synthetic marijuana. Harrison was arrested and transported to jail. The search incident to his arrest revealed approximately $1,700 dollars; the serial numbers on the bills used by the CI matched those in Harrison's possession.

[6] On July 11, 2014, the State charged Harrison with class A felony dealing in a narcotic drug, class D felony possession of a controlled substance, class D felony maintaining a common nuisance, and class A misdemeanor possession of paraphernalia. On September 17, 2014, the State added the following charges: class D felony possession of a narcotic drug, class D felony possession of marijuana, and class A misdemeanor possession of a synthetic drug. Harrison's jury trial took place from September 23 to September 25, 2014. The jury found Harrison not guilty of possession of marijuana and guilty of all remaining charges. The trial court sentenced Harrison on October 20, 2014, to the following concurrent terms: forty-five years for dealing, with five years

suspended; two years for possession of a controlled substance; two years for maintaining a common nuisance; one year for possession of paraphernalia; two years for possession of a narcotic drug; and one year for possession of a synthetic drug. Harrison now appeals.

## Discussion and Decision

## I. Admission of Evidence

[7] Harrison first argues that three pieces of evidence should not have been admitted: the recording of the telephone call between the CI and Harrison setting up the drug buy; the audio recording of the buy; and the video recording of the buy. Harrison concedes that he did not object to the admission of this evidence at trial. As a result, he must establish that the admission of the evidence constituted fundamental error. To rise to the level of fundamental error, the error must produce a degree of prejudice beyond that ordinarily associated with a misapplication of the law. *Maul v. State*, 731 N.E.2d 438, 440 (Ind. 2000). The error must constitute "a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Id.* In other words, the defendant must show that, as a result of the error, a fair trial was impossible. *Boatright v. State*, 759 N.E.2d 1038, 1042 (Ind. 2001).

[8] Harrison's argument for all of the items of evidence is, essentially, that foundational requirements were not met. With respect to the telephone call, the following evidence was presented:

- Officer Smith testified that he is able to recognize Harrison by his voice. Tr. p. 185.
- He further testified that he helped to facilitate a recorded phone call between the CI and Harrison. *Id.* at 186.
- Officer Smith identified the CD on which the phone call was recorded and testified that it bore his handwriting, his name, a case number, and the date. He stated that the CD contained the recording about which he had just testified. *Id.* at 186-87.
- After the recording was played for the jury, Officer Smith identified one voice as the CI and the other voice as Harrison. *Id.* at 188-89.

With respect to the audio recording of the controlled buy, the following evidence was presented:

- Officer Stefanatos testified that he affixed a listening device to Harrison's person just before the controlled buy took place. Tr. p. 299.
- Additionally, Officer Stefanatos testified that he was able to monitor the controlled buy while listening to the audio recording. On that recording, he was able to identify the voices of the CI and Harrison. *Id.* at 300.
- Officer Stefanatos identified the CD bearing the audio recording of the controlled buy and stated that it had not been altered in any way. *Id.*
- As the recording was played for the jury, Officer Stefanatos answered a number of questions about it, confirming that it was what he had heard during the controlled buy. *Id.* at 300-03.

Finally, with respect to the video recording, the following evidence was presented:

- Officer Stefanatos testified that, in addition to the audio recording device, a video recording device had been affixed to the CI before the controlled buy took place. *Id.* at 301.
- Officer Stefanatos identified the DVR bearing the video recording of the controlled buy and stated that it had not been altered in any way. *Id.* at 303.

[9] Harrison complains that there was no evidence regarding how the recordings were made and processed or regarding the chain of custody of the recordings. While it may be true that the State did not lead its witnesses to jump through every single foundational hoop, we cannot say that its failure to do so amounted to fundamental error. The witnesses testified as to the operators of the equipment and the manner of its use. They further confirmed that the voices or persons being recorded were the parties involved in the investigation that day—Harrison and the CI—and that the recordings as played for the jury were consistent with what they had heard and observed the day of the controlled buy. We find that this meets enough of the foundational requirements to prevent it from being fundamental error—it certainly did not deny Harrison a fair trial. We also note that, had a foundational objection been made, we are confident that the witnesses would have been able to answer more specific foundational questions such that the evidence would have been admitted anyway. We decline to reverse on this basis.

## II. Sufficiency

[10] Next, Harrison argues that there is insufficient evidence supporting his conviction for class A felony dealing in a narcotic drug. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Circumstantial

evidence alone is sufficient if inferences may reasonably be drawn that enable the factfinder to find the defendant guilty beyond a reasonable doubt. *Pratt v. State*, 744 N.E.2d 434, 437 (Ind. 2001). To convict Harrison of class A felony dealing in a narcotic drug, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally delivered more than three grams of heroin. Ind. Code § 35-48-4-1.

[11] The record reveals the following evidence:

- The CI was with officers all day before the controlled buy took place, and was thoroughly searched before and after the buy.
- The CI was physically observed by Officer Stefanatos and was equipped with audio and video recording devices that captured his walks to and from the residence as well as the buy itself.
- The CI did not make any stops or pick up anything on his way to or from the residence.
- The CI entered Harrison's residence with $1,000 in cash. Officer Stefanatos recognized Harrison's voice from prior encounters.
- The CI exited Harrison's residence with no cash and 3.37 grams of heroin.
- Law enforcement executed the search warrant on Harrison's residence within a few minutes of the CI's exit. Harrison was arrested. During the search incident to arrest, law enforcement found over $1,000 in cash on his person. The serial numbers on those bills matched the serial numbers of the bills handed to the CI to use in the controlled buy.

We find that this evidence, albeit circumstantial, is more than sufficient to support the jury's conclusion that Harrison was guilty of class A felony dealing in a narcotic drug. Harrison's arguments amount to a request that we reweigh evidence and assess witness credibility—a request we decline. We will not reverse on this basis.

# III. Assistance of Counsel

[12] Finally, Harrison contends he received the ineffective assistance of trial counsel.[7] To prevail on a claim of ineffective assistance, a defendant must show that (1) defense counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the result would have been different but for the inadequate representation. *Troutman v. State*, 730 N.E.2d 149, 154 (Ind. 2000). If a court can dispose of an ineffective assistance claim on the ground of lack of prejudice, that course should be followed. *Wentz v. State*, 766 N.E.2d 351, 361 (Ind. 2002).

[13] Harrison argues that his attorney's performance was ineffective because counsel did not object to the phone call recording or the audio or video recordings of the controlled buy. Initially, as noted above, we are confident that even if an objection had been raised, the State's witnesses would have sufficiently answered any and all foundational questions.

[14] Even if that had not been the case, however, there is so much evidence supporting the convictions aside from these recordings that it would not have mattered. Specifically, the record reveals that the CI entered Harrison's home with $1,000 and returned with 3.37 grams of heroin. The money later found in

---

[7] Typically, ineffective assistance claims are raised in a petition for post-conviction relief. While not prohibited from raising an ineffective assistance claim on direct appeal, if a defendant chooses to do so, he is precluded from re-raising the issue in any subsequent post-conviction proceedings. *Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008).

Harrison's possession matched the serial numbers of the money used by the CI in the controlled buy. In Harrison's home, the police found the following evidence: 1.4 grams of heroin in one location and 1.2 grams in another; marijuana, synthetic marijuana, and various opiate pills; firearms; digital scales in nearly every room of the house; and various paraphernalia typically used by drug users and by those preparing to sell drugs to others, including Ziploc baggies, a cut off straw, a tie-off string, needles, a metal measuring spoon with residue, and lighters. Therefore, even if Harrison's attorney had objected to the recordings and the objection had been sustained, the remainder of the evidence in the record would have readily supported the convictions. He cannot establish that he was prejudiced as a result of his attorney's failure to object to these pieces of evidence. Consequently, his claim of ineffective assistance of counsel must fail.

[15] The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.