**Nathaniel JOHNSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 02A04–8707–CR–213.**

Court of Appeals of Indiana, Fourth District.

Feb. 10, 1988.

Linda Peterson Powell, Helmke, Beams, Boyer & Wagner, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Nathaniel Johnson (Johnson) appeals his conviction for operating a motor vehicle while his driving privileges were suspended. IC 9–12–3–1.

We reverse.

Because we reverse, we address only one issue, whether Johnson was "operating" a motor vehicle within the meaning of IC 9–12–3–1.

On June 25, 1986, Officer Daniel Taylor (Taylor) observed a 1976 gold Mark IV automobile parked off the roadway on Indianapolis Boulevard in Allen County. Taylor stopped to investigate and found Johnson in the driver's seat. Johnson explained the car was disabled and demonstrated the car would not start. Taylor asked Johnson for identification and ran a routine check on Johnson's license. Taylor learned Johnson's driving privileges had been revoked. He arrested Johnson for operating a motor vehicle while his driving privileges were suspended.

Johnson explained he had not been driving the car, the car would not start. He was waiting for a friend to return with a tow. Two witnesses corroborated this story at trial. The State presented no evidence Johnson had driven the car or that the car was operable at the time of Johnson's arrest. Johnson was convicted at a jury trial. From this conviction he appeals.

The statute here involved is IC 9–12–3–1: Operating motor vehicle while privileges are suspended; Class D felony; additional penalty

Sec. 1. (a) A person who operates a motor vehicle:

while his driving privileges are suspended under IC 9–12–2; or in violation of restrictions imposed under IC 9–12–2;

commits a Class D felony.

(b) In addition to any criminal penalty, a person who is convicted of a felony under subsection (a) forfeits the privilege of operating a motor vehicle for life. *As added by P.L. 79–1984, SEC. 1.*

The State contends "operate" means merely to "exert control over a vehicle." We disagree.

In construing statutes, our foremost concern is to determine and give effect to the true intent of the legislature. *Frame v. South Bend Community School Corp.* (1985), Ind.App., 480 N.E.2d 261, 263. It is a fundamental rule of statutory interpretation words and phrases should be given their plain, ordinary meaning. *Charles W. Smith & Sons v. Lichtefeld–Massaro* (1985), Ind.App., 477 N.E.2d 308, 309.

In normal usage, "operate" means "to perform a function, or operation, or produce an effect." BLACK'S LAW DICTIONARY 1984 (rev. 5th ed. 1979); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1580–81 (G. & C. Merriam 1981) ("2a: to cause to function usually by direct personal effort; work [operate] a car …"). Therefore, the word "operate" requires effort, the doing of something, by the operator.

We cannot agree with the State's contention Johnson operated the vehicle in this case. Common sense and simple reasoning must prevail over legal sophistry in this case.

The State contends Johnson's attempts to start the car constitutes "operating" the vehicle. The State cites four cases in support of its argument. All relate to cases of operating a motor vehicle while intoxicated, and all are distinguishable.

In *Huey v. State* (1987), Ind.App., 503 N.E.2d 623, the defendant was arrested in a gas station and claimed he was not operating his vehicle on a public road. There, the court held operating a vehicle may occur on public or private property. Although Johnson was off the roadway, he does not dispute that the statute applies to a person situated off the roadway. *Huey* addresses an issue not involved in this case. The question here is whether he was operating the vehicle, not where the operating thereof occurred.

In *Garland v. State* (1983), Ind.App., 452 N.E.2d 1021, the court held, sitting behind the wheel of a car with the motor running and lights on, even though the car was stuck in a snow bank was operating a motor vehicle. *Garland* explains the distinction between the cases cited by the State and the present fact situation. In *Garland* the defendant "was in sole control of a vehicle *in operation.*" (Our emphasis). *Garland, supra,* at 1022.

We agree with the State's contention the State does not have to prove movement of the car. However, that is not the issue here.

Johnson's vehicle was not operable in the sense that his car would not move and his car would not start. The difference between *Garland* and the case at hand is it was impossible to start Johnson's vehicle. Johnson's automobile was not in operation, it was inoperable. Thus, Johnson was not operating that motor vehicle because he could not operate it under any set of circumstances then existing.

In *Rose v. State* (1976), 168 Ind.App. 674, 345 N.E.2d 257, the defendant was found asleep behind the steering wheel of a car stopped at an intersection with its lights on and its motor running—again, a case clearly distinguishable from the one before us. Johnson's vehicle was inoperable.

Finally, in *Bowlin v. State* (1975), 164 Ind.App. 693, 330 N.E.2d 353, the defendant was found on the median strip on a four-lane highway, the ignition was on, the engine was dieseling and steaming, defendant was seated in the driver's seat asleep, he was the only occupant of the car, and an open beer bottle was between the defendant's legs. Clearly, *Bowlin* could have operated that vehicle because it was operable. Thus, the rule in *Bowlin* also does not apply here.

Another rule compels us to this decision. Criminal statutes may not be enlarged by implication or intendment beyond the fair meaning of the language used. *State v. McGraw* (1985), Ind., 480 N.E.2d 552, 553. This court may not enlarge the meaning of "operate" to include Johnson's action of merely demonstrating to the officer the vehicle was incapable of being operated.

The Florida Appellate court passed upon this issue in *Jones v. State* (1987), 510 So.2d 1147. There, the police found Jones slumped over the wheel of her car on the shoulder of a public road. The car was inoperable. The trial court certified to the court of appeals the question of whether a motor vehicle must be capable of immediate self powered mobility in order to convict a person for driving under the influence of alcohol.[1]

There the court stated:

> Because the vehicle in which Ms. Jones was sitting was found to be inoperable so that it could not be moved except by an outside agency, we cannot say that she had actual physical control of a vehicle as defined by § 316.003, Fla.Stat. (1985). We therefore reverse appellant's conviction and direct her discharge.

*Jones,* 510 So.2d at 1149.

Other jurisdictions have reached the same conclusion. See *Reddie v. State* (1987), Tex.App., 736 S.W.2d 923; *State v. Goseyun* (1987), 153 Ariz. 119, 735 P.2d 149; *Roberts v. Commissioner of Public Safety* (1985), Minn.Ct.App., 371 N.W.2d 605.

To extend the meaning of 9–12–3–1 to include the facts of the present controversy would enlarge the definition of "operating" as used in the statute beyond its reasonable meaning. Criminal statutes must be strictly construed against the State. Johnson was not in sole control of a vehicle "in operation." The clear purpose of this statute is to protect the motoring public from drivers it has determined are dangerous. Where the vehicle is inoperable the driver cannot be a threat to others using the highway.

Reversed with instructions to enter judgment for defendant.

MILLER, P.J., and RATLIFF, C.J., concur.

1. Florida defines driving under the influence as driving or being in actual physical control of a vehicle while under the influence of alcohol.