Louis J. BAKER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 66S04–0005–CR–345.

Supreme Court of Indiana.

July 17, 2001.

---

Kevin C. Tankersley, Winamac, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Louis J. Baker was found guilty of five crimes related to the sexual assault of Tammy McCann inside her mobile home in Winamac. On direct appeal, the Court of Appeals affirmed his convictions for rape, residential entry, battery, and being an habitual offender. It held his conviction for sexual battery merged. *Baker v. State*, 66A04–9812–CR–585, slip op. at 3, 10, 723 N.E.2d 485 (Ind.Ct.App. 2000).

With regard to his conviction for rape, Baker says the Court of Appeals erroneously held that he failed to preserve his claim that the trial court wrongly excluded evidence about his prior sexual conduct with McCann. (Appellant's Petition To Transfer at 1–2.) We agree, and grant transfer to so hold. The convictions are otherwise affirmed.

### I. Facts and Procedural History

The evidence favorable to the verdict revealed that in the early morning hours of August 9, 1998, Baker climbed through a window into McCann's home and found her asleep on a couch. He told her he came in through the unlocked front door. The pair had known each other for several years, and Baker had been to her home a number of times. He had even stayed overnight on occasion. The pair talked in the kitchen, for some thirty minutes about Baker's problems with his girlfriend. McCann did not want him to drive because he had been drinking, and told him he could spend the night.

McCann walked back toward her bedroom to retrieve a can of soda. As she

walked, she realized Baker had actually entered her home through a window and she became frightened "because I figured that he had broke in...." (R. at 1130.)

After she picked up the soda from the bedroom floor, she discovered that Baker had followed her. He forced her onto the bed and raped her. Afterwards, he apologized and left.

Later that day, McCann and her husband reported the incident to the police. The State eventually charged Baker with rape, burglary, residential entry, sexual battery, and battery.[1] It also alleged he was an habitual offender.[2] After a four-day trial, a jury found Baker guilty on all charges except burglary. The trial court sentenced him to ten years in prison for the four convictions, and added thirty years for being an habitual offender.[3]

On appeal, Baker raised five issues:

1. Whether the trial court erred by allowing the prosecutor's investigator to testify;

2. Whether the trial court erred by allowing the prosecutor's investigator to read a transcript of his interview with Baker to the jury;

3. Whether evidence of Baker's criminal record was erroneously admitted;

4. Whether Baker's testimony about a prior sexual relationship with the victim was improperly excluded; and

5. Whether Baker's convictions for rape and sexual battery should be merged.

The Court of Appeals ruled against Baker on the first three issues, and we summarily affirm them on these points. Ind. Appellate Rule 58(A). We proceed to examine the fourth issue. Our resolution of that question may render the fifth issue moot.

## II. Prior Sexual History Evidence

On October 7, 1998, before the trial began, Baker's attorney, Kevin C. Tankersley, filed a "Notice of Past Sexual Conduct—Rule 412" which stated that "evidence will be presented detailing a prior sexual relationship between the victim and the Defendant."[4] (R. at 339.) Two days later, the prosecutor filed an objection, arguing that the proposed evidence was vague, irrelevant to the rape allegation, and unverifiable. She also said the probative nature of this evidence was outweighed by its prejudicial nature, and it would embarrass the victim. She further claimed that the Rape Shield Statute[5] was designed to protect victims of sex crimes from a general inquiry into their sexual past.

On October 9, 1998, Baker's attorney filed in open court a "Supplement to Defendant's Notice of Past Sexual Conduct" and asserted the defendant had "a prior sexual relationship" with the victim. (R.

---

1. Count I, rape, class B felony, Ind.Code Ann. § 35–42–4–1(a)(1) (West Supp.2000); Count II, burglary, class B felony, Ind.Code Ann. § 35–43–2–1 (West 1998); Count III, residential entry, class D felony, Ind.Code Ann. § 35–43–2–1.5 (West 1998); Count IV, sexual battery, class D felony, Ind.Code Ann. § 35–42–4–8(a)(1) (West Supp.2000); Count V, battery, class A misdemeanor, Ind.Code Ann. § 35–42–2–1 (West 1998).

2. Ind.Code Ann. § 35–50–2–8 (West 1998).

3. In addition to the felony convictions Baker received in this case, he had been convicted of resisting law enforcement, a class D felony, in 1990 and burglary, a class C felony in 1995. (R. at 641.)

4. Indiana Evidence Rule 412(a) reads: "In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except: (1) evidence of the victim's or of a witness's past sexual conduct with the defendant...."

5. Ind.Code Ann. § 35–37–4–4 (West 1998).

at 367.) He claimed Baker had "multiple prior sexual contacts" and an "on-going affair" with the victim. (*Id.*) On October 12th, the State filed a motion in limine seeking to keep the jury from hearing *any* evidence of the victim's past sexual conduct. At a pretrial hearing on October 14th, Baker testified he had sexual relations with the victim about twenty times, beginning May 5, 1998. (R. at 960–66.) McCann testified she never had consensual sex with Baker. (R. at 971–73.)[6] The trial court granted the prosecutor's motion in limine.

On the day Baker was scheduled to testify at trial, his attorney filed "Defendant's Offer of Evidence Under Indiana Evidence Rule 412(a)(1)". The document asserted the defendant and the victim had "some twenty acts of consensual sexual intercourse in the months preceding the date of this alleged offense." (R. at 551.) It asked the court "to make a specific ruling either revoking its grant of the State's Motion in Limine or affirming that ruling." (*Id.*)

While Baker was on the stand, the following exchange occurred:

[Prosecutor] Calabrese: He's getting awful close to the testimony that has already been ordered by this Court to be non-admissible. I just wanted to . . .

Mr. Tankersley: What testimony?

The Court: You're not going to get *into their prior sexual relationship*, right?

Mr. Tankersley: Oh, no. I'm not going anywhere near that.

The Court: Okay.

Mr. Tankersley: But I mean—he's going to testify that he knows her.

Ms. Calabrese: Well, I know but any inference that they can draw from there,

including the stuff, you're getting into the stuff that has already been taken out of this.

Mr. Tankersley: No, I'm not. He's not going to get into anything (inaudible).

The Court: Okay.

(R. at 1604) (emphasis added).

In the end, neither Baker nor any other witness testified about any prior sexual history between Baker and McCann.

After the Court of Appeals issued its opinion, Baker's attorney filed a "Motion to Correct the Record of Proceedings" under Ind. Appellate Rule 7.2(C)(2). Baker asserted the record did not "truly disclose what occurred in the trial court because the transcript of proceedings does not include a discussion between Defense counsel and the trial judge wherein the Defendant's written offer of proof was discussed and the trial court reaffirmed that the evidence would not be admissible at trial." (Supp. R. at 12.)

In an affidavit filed with this motion, Tankersley said he filed his written offer in the court's office while the judge was present and told the judge he was filing it to preserve the prior sexual conduct issue for appellate review. He said he asked if the judge planned to change his mind and allow the evidence and the judge replied that he believed the evidence was more prejudicial than probative and would not allow the jury to hear it. Tankersley took that statement as a re-affirmation of the pretrial ruling.

In a hearing held February 29, 2000, on the motion to correct the record, the prosecutor countered that she was unaware of the foregoing events. She also pointed out that the defendant had several opportuni-

---

**6.** Whether Baker's allegations are true, of course, bears only a little on whether he was entitled to tell this story to the jury and not at

all on whether he has preserved the issue for appeal.

ties to make an offer of proof. At this hearing, Tankersley argued the important issue was whether the trial court considered Baker's "Offer of Evidence Under Indiana Evidence Rule 412(a)(1)," and whether or not the trial court re-affirmed its pretrial ruling. The trial court replied:

We may have had a casual conversation. I honestly don't remember, you know, exactly what was said. I—I suppose my proper recollection is that, that I took this as your effort to preserve the issue since it was not going to be brought up in front of the jury.

(Supp. R. at 36.)

Later in the hearing the trial judge said:

I will say I assumed that it was your effort to preserve the issue which I had already spoken to on, on the motion in limine. So, I never [went] further beyond ruled on (sic) that because I felt it was your effort to preserve the, the issue, and so I didn't make any effort to rule on it in open court.

(Supp. R. at 40.)

The prosecutor argued that there was never any offer of proof when she, the trial court and the defendant's attorney were all present. The defense argued that the sidebar colloquy, which occurred upon a prosecution objection, was an affirmation of the trial court's earlier decision to keep the issue of prior sexual conduct from the jury. Following this hearing, on February 29, 2000, the trial court entered an order stating, "[T]he Court remembers receiving the Defendant's Offer of Evidence Under Indiana Rule of Evidence 412(a)(1) and having made the same of record, outside the presence of the jury and off the record." (Supp. R. at 20.)

### III. This Offer to Prove Was Good Enough

■ Indiana Evidence Rule 103(c) states that "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." To comply with Evid. R. 103(c), practitioners use motions in limine, which seek "a protective order against questions or statements so as to keep prejudicial matters from the jury until the court has ruled at trial upon the admissibility of such matters." Robert L. Miller, Jr., *Courtroom Handbook on Indiana Evidence* 12 (2001 ed.); *Norton v. State*, 273 Ind. 635, 650, 408 N.E.2d 514, 525 (1980).

■ After a court has ruled on the admissibility of the evidence in question:

To preserve a claim of error in a ruling excluding evidence, the proponent of the evidence must make the substance of the evidence known to the trial court by a proper offer of proof, unless the substance of the evidence was apparent from the context in which the questions were asked.

Miller, *supra* at 10 (citing Ind. Evid. R. 103(a)(2)). This technique gives the trial court "an opportunity to rule on its admissibility at that time." *Miller v. State*, 716 N.E.2d 367, 370 (Ind.1999)(quoting *Tyra v. State*, 506 N.E.2d 1100, 1103 (Ind.1987)). According to a leading authority on evidence issues:

Prior to the offer of proof, the judge might not have appreciated the relevance of the line of inquiry. However, the primary, formal reason is to preserve the issue for appeal by including the proposed answer and expected proof in the official record of trial. In case of appeal from the judge's ruling, the appellate court can better understand the scope and effect of the question and proposed answer to decide whether the judge's ruling sustaining an objection

was error, whether the error was prejudicial, and what final disposition to make on appeal.

*1 McCormick on Evidence* § 51, 217 (John W. Strong et al., 5th ed.1999).

Another authority notes that an offer of proof will *"reduce* uncertainty as to the nature of the excluded evidence to a tolerable and acceptable level; by doing so, the offer of proof serves to improve the reliability of the appellate court's guesses and estimates concerning the probability that the trial court's error was either prejudicial or harmless." 1 *Wigmore, Evidence* § 20a, 865 (Tillers rev.1983)(emphasis in original). Professor Wigmore's successors also point out that the requirement of an offer to prove limits the "offers of nonexistent evidence with the hope of establishing a basis for appeal when they expect that the trial court will make an erroneous ruling that the (nonexistent) evidence will not be admitted." *Id.* at 866.

■ At least for these reasons, Indiana practice on preservation of error about exclusion of evidence requires the proponent, out of the hearing of the jury, to propose certain questions and give the court a chance to rule, and make an offer of proof. When this procedure is not followed, as explained in *Mitchem v. State,* 503 N.E.2d 889 (Ind.1987), any claim of error is not available for appellate review:

> The proper remedy would have been to call [the] witness, and if objections to his testimony were lodged and sustained, an offer to prove could have been made by Appellant ... It is well established that without the witness being called and questioned, and without an objection to his testimony being sustained, no offer to prove could have been made.

*Id.* at 893. Failure to follow this practice forfeits appellate review even when the trial court earlier granted a motion in limine. *Bieghler v. State,* 481 N.E.2d 78, 93

(Ind.1985)(citing *Smith v. State,* 426 N.E.2d 364 (Ind.1981)).

The rule requiring an offer to prove serves a number of useful purposes, but there is such a thing as being too rigid about format. In the recent case of *Vehorn v. State,* 717 N.E.2d 869 (Ind.1999), we concluded that the defense had come close enough. In *Vehorn,* the defendant challenged the admissibility of a witness' testimony at a pretrial evidentiary hearing by objecting to the testimony as hearsay. *Id.* at 872. The trial court heard argument and denied the defendant's motion to exclude the testimony. During the hearing, the trial court told both counsel that if there is "a close call" on the admissibility of the evidence and an objection is sustained, "I don't want the Jurors to have heard that...." *Id.* At trial the defense did not object to the witness' testimony. *Id.* On appeal, the State argued that by failing to object at trial, the defense had waived any error. *Id.* However, this Court held:

> While the prudent lawyer will always provide a contemporaneous objection at trial so as to preserve an issue for appeal, there are occasional exceptions to this general rule. This case provides one of them. During the pretrial hearing, the judge provided explicit assurance that an objection as to [the witness'] hearsay testimony was preserved for appeal when it told defense counsel that "even if you don't object, the Court will find ... that your objections to this type of evidence have been timely made."

*Id.* at 872–73. The trial court had effectively forbidden any objection in front of the jury, so we found the issue preserved. *Id.* at 873.

There are some obvious distinctions between *Vehorn* and Baker's case. *Vehorn*

involved the failure to make an objection at trial while Baker's attorney failed to make an oral offer to prove at trial. In both cases, however, the issue originated with a motion in limine and the key question in both involves the preservation of the issue for appeal. The issues (hearsay in *Vehorn* and prior sexual history here) were addressed during pretrial. *Id.* at 872, (R. at 960–73). In Baker's case, a sidebar discussion of the issue occurred immediately before the witness was to testify and the court made its position plain. (R. at 1604.)

In *Vehorn,* the pretrial record showed the trial judge wanted to avoid an objection in front of the jury. *Vehorn,* 717 N.E.2d at 872. In Baker's case, the sidebar conversation showed the court's similar intent, that any sexual history between the defendant and the victim should not be aired in front of the jury.

The trial judge's own recollection that he made no "effort to rule on it in open court," (Supp. R. at 40), because the defendant had already taken reasonable steps to preserve the issue further indicates the court had considered the matter and intended to enforce his earlier ruling. Finally, the trial court indicated he recalled receiving the defendant's offer of evidence. (Supp. R. at 20.)

The primary reasons for requiring an offer to prove were satisfied. The sidebar colloquy shows the trial court was aware of the evidence of sexual history and at least implicitly re-affirmed his decision to exclude it. Given the clear-cut nature of the proposed testimony (he asserts a sexual relationship; she denies it), we find the issue sufficiently preserved for appeal.

### IV.   Effect of the Exclusion

■ The Court of Appeals correctly observed that Evidence Rule 412(a)(1) contains an explicit exception for "evidence of the victim's ... past sexual conduct with the defendant" and that excluding it would be erroneous.

Where the charge was rape and the defense was consent and only the two parties were present, we find ourselves unable to say that prohibiting Baker from offering evidence of a recent and regular sexual relationship did not affect his substantial rights. *See* Ind. Trial Rule 61.

### Conclusion

We therefore reverse the rape conviction and remand for a new trial. Should Baker be found guilty of rape upon retrial, the trial court will need to consider whether the sexual battery conviction should be merged with it.

Baker's convictions for residential entry, sexual battery, misdemeanor battery, and the habitual offender finding are otherwise affirmed. If the State elects not to retry the rape charge, the trial court may conduct a new sentencing on these four counts.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.