FILED

Aug 17 2018, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Benjamin D. Waite
Deppe Law Center
Hobart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Denny Henderson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 17, 2018

Court of Appeals Case No.
18A-CR-574

Appeal from the Porter Superior
Court

The Honorable David L.
Chidester, Judge

Trial Court Cause Nos.
64D04-1711-F6-11030
64D04-1703-CM-2189

**Bradford, Judge.**

# Case Summary

[1] On the morning of January 11, 2017, Denny Henderson was involved in an automobile accident outside the Porter police station when the truck he was driving collided with other vehicles parked in front of the station. He was subsequently charged with and found guilty of Class A misdemeanor driving while intoxicated, endangering a person. Henderson appeals his conviction, arguing that the trial court abused its discretion in admitting certain evidence, excluding certain evidence, and instructing the jury. Concluding otherwise, we affirm.

# Facts and Procedural History

[2] On January 10, 2017, Henderson went to a party at Mike Pouche's home in Porter. Charlie Fernandez, Henderson's step-son, was at the party with Henderson. At some point, Fernandez fell asleep. He was awakened during the early morning hours of January 11, 2017, when he heard Henderson "yelling for help[, y]elling for someone to call the police." Tr. Vol. III, p. 133. Fernandez and Henderson left Pouche's home and went to a nearby police station.

[3] Once at the station, Fernandez locked the driver's side door of Henderson's truck, propped his coat underneath Henderson's head, and exited the passenger side of the truck. Fernandez entered the station and spoke with dispatcher Danielle Scott. Fernandez informed Scott that he needed help because

Henderson was in the truck, bleeding and hurt. Porter Police Corporal Jason Casbon was the first to respond. Chesterton Police Sergeant Daniel Rocha also responded.

[4] Upon arriving at the station, Corporal Casbon spoke with Fernandez. After determining that he was ok, Corporal Casbon turned his attention toward the area where Henderson's truck was parked. He noticed Scott's Honda Civic, a Kia belonging to another dispatcher, and Henderson's truck. The truck's front bumper was "resting up against the back pumper of the Honda Civic." Tr. Vol. III, p. 23.

[5] As he approached the truck, Corporal Casbon observed that Henderson, the only person in the truck, was sitting in the driver's seat, leaning over into the passenger side of the cabin. Henderson appeared to be injured. Corporal Casbon also discovered that the truck was still running and that the driver's side door was locked. As he turned to walk back to his squad car to get a "lock-out tool" to unlock the driver's side door, Corporal Casbon heard the truck's "engine start to rev." Tr. Vol. III, p. 26. The truck slowly started to push the Honda Civic. It accelerated, hit Corporal Casbon's nearby squad car, and pushed the Honda Civic into the Kia. Corporal Casbon and Sergeant Rocha were eventually able to turn the truck off and remove Henderson from the vehicle.

[6] Sergeant Rocha observed that Henderson appeared confused, hurt, and agitated. His face was covered with blood and he expressed concern for

Fernandez. Corporal Casbon noticed the strong odor of alcohol on Henderson's breath and clothing. His eyes were watery and his speech was slurred. Based on his training and experience, Corporal Casbon concluded that Henderson's behavior was consistent with that of a person who was under the influence. Henderson was eventually transported to the hospital where he was treated for his injuries. Each of the medical personnel that encountered Henderson that night concluded that he was intoxicated.

[7] Approximately five days later, Henderson called the police station and requested to speak with Corporal Casbon. During their conversation, Henderson "was apologetic for what happened and his behavior that night." Tr. Vol. III, p. 47. He explained "why he wouldn't let [Fernandez] drive and he said [it was] because [Fernandez] was slow." Tr. Vol. III, p. 47. Henderson admitted to driving the truck on the night in question, offered to pay for the damage to the vehicles, and thanked Corporal Casbon "for saving his life." Tr. Vol. III, p. 48.

[8] On March 7, 2017, the State charged Henderson under Cause Number 64D04-1703-CM-2189 with Count I – Class A misdemeanor operating a vehicle while intoxicated, endangering a person; Count II – Class C misdemeanor operating a vehicle with an alcohol concentration equivalent to at least .08 but less than .15; Count III – Class C misdemeanor operating a vehicle while intoxicated; and Count IV – Class A misdemeanor resisting law enforcement. On November 28, 2017, the State added nine additional counts, including a Level 6 felony count, and the matters were consolidated under Cause Number 64D04-1711-F6-11030.

Henderson sought to dismiss the additional charges, and, on November 30, 2018, the trial court dismissed each of the nine additional charges as well as the original Count II. Following a two-day jury trial, Henderson was found guilty of Counts I and III and not guilty of Count IV. The trial court merged Count III into Count I and sentenced Henderson to a 365-day term with all but four days suspended to probation.

# Discussion and Decision

## I. Evidentiary Issues

### A. Standard of Review

[9] "The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and a reviewing court will reverse only upon an abuse of that discretion." *Lieberenz v. State*, 717 N.E.2d 1242, 1245 (Ind. Ct. App. 1999), *trans. denied*. "An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Anderson v. State*, 961 N.E.2d 19, 26 (Ind. Ct. App. 2012). "In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor." *Sallee v. State*, 777 N.E.2d 1204, 1210 (Ind. Ct. App. 2002). We will not reverse the trial court's decision to admit or exclude evidence if that decision is sustainable on any ground. *Crawford v. State*, 770 N.E.2d 775, 780 (Ind. 2002).

## B. Inclusion of Fernandez's Statement to Corporal Casbon

[10] During trial, Henderson objected to Corporal Casbon's testimony that "in the course of [his] investigation Charlie Fernandez told me that his father would not allow him to drive, he drove." Tr. Vol. III, p. 29. In making his objection, Henderson argued that the statement was hearsay. The trial court overruled Henderson's objection and allowed the statement into evidence.

[11] Henderson contends that the trial court abused its discretion in admitting this statement. "Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *McClain v. State*, 675 N.E.2d 329, 331–32 (Ind. 1996). Moreover, "[e]rrors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the party." *Leonard v. State*, 86 N.E.3d 406, 413 (Ind. Ct. App. 2017) (internal quotation omitted).

[12] Review of the record reveals that the challenged evidence was merely cumulative of other evidence in the record. First, and most importantly, the challenged testimony is cumulative of Henderson's admission that he was driving the truck on the night in question.[1] The testimony is also cumulative of Corporal Casbon's and Sergeant Rocha's testimony that Henderson was sitting in the driver's seat when the truck's engine revved and the truck struck the other

---

[1] Henderson claims in his Reply Brief that his admission was struck from the record after his objection to the state's method of questioning was sustained. We disagree because our reading of the record indicates that the objection was lodged after and related to a subsequent question posed by Henderson's counsel.

vehicles.  We need not decide whether the challenged statement was hearsay or was improperly admitted because the testimony was merely cumulative of other evidence in the record.  As such, any error in admitting the testimony was harmless.  *See McClain*, 675 N.E.2d at 332 (providing that the evidence at issue was cumulative of other evidence, admission of the evidence was harmless and reversal was not required).

## C.  Exclusion of Evidence Relating to Events that Occurred at Pouche's Home

[13]    Henderson also argues that the trial court abused its discretion by excluding evidence relating to how he sustained his injuries.  It is undisputed that Henderson did not make an offer of proof in relation to the challenged evidence.

> The purpose of an offer of proof is to convey the point of the witness's testimony and provide the trial judge the opportunity to reconsider the evidentiary ruling.  Equally important, it preserves the issue for review by the appellate court.  To accomplish these two purposes, an offer of proof must be sufficiently specific to allow the trial court to determine whether the evidence is admissible and to allow an appellate court to review the correctness of the trial court's ruling and whether any error was prejudicial.

*State v. Wilson*, 836 N.E.2d 407, 409 (Ind. 2005) (internal citations omitted). Henderson acknowledges that "[g]enerally speaking, an appealable error may not be predicated upon a ruling which excludes evidence unless the substance of the evidence was made known to the Court by a proper offer of proof or was

apparent from the context within which the questions were asked." Appellant's Br. p. 15. However, Henderson asserts that his failure to make an offer of proof should be excused because both the parties and the trial court were generally aware of Henderson's claim that the injuries sustained during a fight that occurred at Pouche's home negatively impacted his mental state and ability to drive. In support, Henderson cites to the Indiana Supreme Court's decision in *Baker v. State*, 750 N.E.2d 781 (Ind. 2001).[2]

[14] In *Baker*, the Indiana Supreme Court reiterated that after a trial court has ruled on the admissibility of the evidence in question, in order to preserve a claim of error, the proponent of the evidence must make the substance of the evidence known to the trial court by a proper offer of proof, unless the substance was apparent from the context in which the questions were asked. 750 N.E.2d at 785. The offer of proof should "reduce uncertainty as to the nature of the excluded evidence to a tolerable and acceptable level" and, by doing so, "improve the reliability of the appellate court's guesses and estimates concerning the probability that the trial court's error was either prejudicial or harmless." *Id.* at 786 (internal quotation omitted). The Indiana Supreme Court noted that failure to make an offer of proof "forfeits appellate review even when

---

[2] Henderson also relies on the Indiana Supreme Court's decision in *Vehorn v. State*, 717 N.E.2d 869 (Ind. 1999). *Vehorn*, however, is of no help to Henderson as the Indiana Supreme Court's decision was based largely upon the fact that the record contained an explicit assurance from the trial judge that it had considered counsel's objection to the admission of the evidence and that counsel's objection to the admission of the challenged evidence was sufficient to preserve an appellate challenge to the admission of the evidence. 717 N.E.2d at 872–73.

the trial court earlier granted a motion in limine." *Id.* However, it further noted that "there is such a thing as being too rigid about format." *Id.* The Indiana Supreme Court concluded that the record clearly showed that the trial court was aware of the evidence at issue and "at least implicitly re-affirmed [its] decision to exclude it. Given the clear-cut nature of the proposed testimony (he asserts a sexual relationship; she denies it), we find the issue sufficiently preserved for appeal." *Id.* at 787.

[15] The facts of this case can be distinguished from those in *Baker*. With regard to evidence relating to that fight, the trial court issued the following pre-trial ruling:

> The Defense witnesses will limit their testimony to the injuries they observed on the Defendant prior to his driving to the police station, and may not testify as to the specifics of the fight or stabbing in which he was injured, the causes for the fight or stabbing, the perpetrators of the battery to him, or the like. The Defendant or defense witnesses may testify that Defendant was held down or bound against his will when he was battered, as that matter goes to his resistance to police and his theory of defense.

Appellant's App. p. 44. The trial court's ruling makes it clear that evidence generally explaining how Henderson sustained his injuries prior to arriving at the police station would be admitted while evidence relating to the specific nature and cause of the fight would be excluded. The crux of Henderson's defense seems to be that he was injured to the point that he was unable to operate his truck. The evidence permitted by the trial court, *i.e.*, that he was

allegedly held down or bound and battered prior to arriving at the station, is relevant to this defense. The excluded evidence, *i.e.*, why the fight occurred or a detailed account of the fight itself, is not.

[16] Further, Henderson does not indicate what evidence he sought to admit beyond that deemed admissible by the trial court. The lack of information relating to what additional evidence Henderson sought to present leaves no way for either the trial court or this court to determine whether the exclusion of said evidence was prejudicial or harmless. Given that the substance of the proposed evidence was not clear, we conclude that by failing to make an offer of proof, Henderson has forfeited appellate review of this claim. *See Baker*, 750 N.E.2d at 786.

[17] Henderson alternatively claims that he is entitled to relief under the doctrine of fundamental error. "The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010) (internal quotation omitted). "To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002) (internal quotation omitted).

[18] In claiming fundamental error, Henderson asserts that a "well-informed trial court prohibited the jury from learning relevant evidence about how and why Henderson arrived to the Porter [p]olice station or that he lacked the ability to

cause the secondary collision due to the extent of his injuries." Appellant's Br. pp. 23–24. We disagree. The trial court allowed Henderson to present testimony relating to how he sustained the injures, the extent of his injuries, and that he went to the police station seeking assistance and treatment for his injuries. The jury heard evidence that Henderson was battered and suffered injuries to his head. It also heard Henderson's argument that his injuries left him unable to operate his truck. The fact that the jury did not hear specific details about how Henderson sustained the injuries beyond that he had been beaten in a fight did not constitute a blatant violation of due process or render a fair trial impossible.

## II. Jury Instructions

[19] Henderson also contends that the trial court abused its discretion in instructing the jury.

> The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. We review a trial court's instructions to the jury for an abuse of discretion. An abuse of discretion arises when the instruction is erroneous and the instructions taken as a whole misstate the law or otherwise mislead the jury. When evaluating the jury instructions on appeal this Court looks to whether the tendered instructions correctly state the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions.

*Isom v. State*, 31 N.E.3d 469, 484–85 (Ind. 2015) (internal citations and quotations omitted).

[20] Henderson challenges one of the instructions relating to his conviction for Class A misdemeanor operating a vehicle while intoxicated, endangering a person. Indiana Code section 9-30-5-2 defines this offense as follows:

> (a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor.

> (b) An offense described in subsection (a) is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person.

In *Johnson v. State*, 518 N.E.2d 1127, 1128 (Ind. Ct. App. 1988), we noted that in normal usage, the term operate means "to perform a function, or operation, or produce an effect." (Internal quotation omitted). Thus, "the word 'operate' requires effort, the doing of something by the operator," *id.*, and "[t]here must be some direct or circumstantial evidence to show that [the] defendant operated the vehicle." *Hiegel v. State*, 538 N.E.2d 265, 268 (Ind. Ct. App. 1989). In considering what one must do to "operate" a vehicle, we have found that merely starting the engine of the vehicle is insufficient to prove operation. *Id.* However, "the State does not have to prove movement of the car." *Johnson*, 518 N.E.2d at 1128. Operating may occur on public or private property. *Id.*

[21] Henderson challenges the trial court's jury instruction regarding operation, which reads as follows:

> "Operate" means to navigate or otherwise be in actual physical control of a vehicle, motorboat, off-road vehicle, or snowmobile.
>
> Several factors may be examined to determine whether a Defendant has "operated" a vehicle:
>
>> 1. the location of the vehicle when it is discovered;
>> 2. whether the car was moving when discovered;
>> 3. any additional evidence indicating that the Defendant was observed operating the vehicle before he was discovered; and
>> 4. the position of the automatic transmission.
>
> In addition to these four factors, any evidence that leads to a reasonable inference should be considered.

Appellant's App. p. 64. While Henderson acknowledges that this instruction incorporates the previously-approved factors relating to operation, *see Hampton v. State*, 681 N.E.2d 250 (Ind. Ct. App. 1997), he argues that the instruction presents an incomplete statement of the law because it fails to inform the jury that he was required to expend some effort to operate his truck. Henderson, therefore, asserts that the trial court abused its discretion by failing to include in its instruction that the State was required to show that he expended effort to operate the truck.

[22] While Henderson correctly argues that we have previously concluded that there must be some evidence that a defendant expended effort to operate a vehicle, he has pointed to no authority indicating that a trial court is required to instruct the jury to this fact. Rather, our review of the relevant caselaw suggests that a defendant's effort is commonly inferred from the facts and circumstances of

each individual case. This seems appropriate given that effort merely amounts to "the doing of something" by the defendant. *See Johnson*, 518 N.E.2d at 1128.

[23] Further, three of the four previously-approved factors relating to operation inherently include some form of effort by the defendant. For instance, if a vehicle is moving or if an individual is observed driving the vehicle, one may reasonably infer that some effort was expended by the driver. Likewise, if a vehicle's transmission is found to be in gear, as opposed to in park, one may reasonably infer that some effort was expended by the driver.

[24] In this case, Henderson was observed sitting in the driver's side of the seat with the truck running. Although he was observed to be leaning over at one point, he managed to "rev" the engine and put the truck in gear. Once in gear, the truck moved forward and struck the other vehicles. At the time, Henderson was the only person in the truck. These facts suggest that Henderson expended some effort in operating the truck. This evidence is in addition to evidence that Henderson admitted that he drove the vehicle from Pouche's home to the police station.[3]

[25] Henderson's defense counsel argued before the jury that the law requires some effort by the defendant and the State failed to prove that Henderson expended any such effort. Counsel highlighted testimony indicating that Henderson had been in and out of consciousness and was slumped over the passenger seat. He

---

[3] It is undisputed that it takes effort to drive a vehicle from one point to another.

argued this testimony indicated that Henderson was unable to expend the effort necessary to operate the vehicle. The matter was squarely placed before the jury's attention, and the jury found contrary to Henderson's argument.

[26] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.